IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHELLE A. SKRUPSKIS, et al.,

      Plaintiffs,

vs.                                          No. CIV 00-1246 MV/WWD

DAVID ALBRIGHT, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Fourteenth Amendment Liberty Interest Claim (Count II) filed November 22, 2000 **[Doc. No. 11]**, and Defendant David Albright's Motion to Dismiss Plaintiffs' Pendant Intentional Infliction of Emotional Distress Claim filed November 22, 2000 **[Doc. No. 15]**.  The Court, having considered the motions, responses, replies, relevant law, and being otherwise fully informed, finds that Defendants' Motion to Dismiss Plaintiffs' Fourteenth Amendment Liberty Interest Claim is not well-taken and will be **DENIED**, and Defendant David Albright's Motion to Dismiss Plaintiffs' Pendant Intentional Infliction of Emotional Distress Claim is well-taken and will be **GRANTED**.

### BACKGROUND

Defendants seek dismissal of certain of Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that plaintiffs have failed to state a claim for which relief may be granted.  Therefore, the Court must assume as true all well-pleaded facts and

must draw all reasonable inferences in favor of the plaintiff.  *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991).  The well-pleaded facts, and reasonable inferences to be drawn therefrom, are as follows.

Plaintiffs Michelle Skrupskis and Daniel Alvarez are employees of the New Mexico State Highway and Transportation Department (hereinafter "SHTD").  Michelle Skrupskis is the Planning Research Supervisor in the Research Bureau; Daniel Alvarez is a researcher and is supervised by Michelle Skrupskis.  Defendant David Albright is the Research Bureau Chief and Plaintiffs' superior.  Defendant Pete Rahn is the Cabinet Secretary, and Charlie Trujillo is the Deputy Cabinet Secretary, of the SHTD.

In August 1999, Michelle Skrupskis questioned the propriety of spending state funds on a trip to be taken by an employee who was on the verge of retirement.  David Albright took retaliatory actions against her, causing her to resign from her job.  Skrupskis later returned to her job.

During her absence, Daniel Alvarez temporarily served as Planning Research Supervisor.  While in that capacity, Alvarez learned that Albright intended to award a full University of New Mexico scholarship to the son of his personal friend without going through the selection committee.  Albright falsely represented to others that Alvarez had participated in awarding the scholarship.  Alvarez reported this incident to Skrupskis when she returned to her position.  For the next several months, Skrupskis and Alvarez gathered additional information regarding Albright's use of scholarship funds.

Skrupskis and Alvarez reported the scholarship matter, and other concerns that they had about Albright, to the Deputy Inspector General in March of 2000.  In retaliation, Albright

2

stripped Plaintiffs of their responsibilities over the Department library, providing a pretextual

reason; gave Skrupskis an impromptu performance appraisal and rated her at the level "Meets

Standards," although she had always been rated at the level "Exceeds Standards"; yelled at

Alvarez in front of his colleagues, causing Alvarez humiliation and distress; and stripped Alvarez

of his duties as a representative to the State Transportation Research Bureau.

In May 2000, both Plaintiffs filed personnel grievances against Albright.  In retaliation,

Albright served written reprimands on Skrupskis and Alvarez, again providing a pretextual

reason, and stripped Plaintiffs of their responsibilities for Staffing Plan Research.

Also in retaliation for their reporting Albright's actions, Albright caused a SHTD

spokesperson to falsely communicate to the press that Plaintiffs were disgruntled employees who

were having an affair with each other in the wake of Alvarez's divorce.

In May 2000, Plaintiffs reported these incidents to the SHTD Inspector General.  In July

2000, Albright proposed to suspend Skrupskis for ten days without pay, giving the pretextual

reason that she had used the wrong fax cover sheet to send a fax.  The fax did not go through and

Albright withdrew the proposed discipline.

Thereafter, Albright escalated his retaliatory actions by: removing Alvarez from a research

project on which he was working; removing Plaintiffs from all projects involving the UNM;

removing Skrupskis from a Methodology Development Project; removing Skrupskis from three

other projects on which she was working; stripping Plaintiffs of their responsibilities in the Mobile

Research Products Room; making false statements to Skrupskis, stating that Alvarez was telling

lies and that he might force her to discipline Alvarez; moving Plaintiffs to a smaller, shared, dirty

office which contained materials from a prior owner and was located in a separate building, apart

3

from all of their colleagues; depriving Plaintiffs of access to computers and to their work materials; and, without notice, deactivating their access cards to the building in which the Research Bureau's offices were located.

Plaintiffs' grievances reached Defendants Rahn and Trujillo, who condoned and ratified Albright's retaliatory actions.

On August 28, 2000, Plaintiffs filed a civil rights complaint alleging that all three Defendants violated 42 U.S.C. § 1983 by: (1) retaliating against Plaintiffs for their constitutionally protected speech in violation of the First Amendment; and (2) disseminating or causing to be disseminated false charges of dishonesty or immorality about them, thereby depriving them of liberty without due process of law in violation of the Fourteenth Amendment.  Plaintiffs also alleged that Defendants Rahn and Trujillo violated 42 U.S.C. § 1983 by breaching their constitutional duties of supervision in violation of the Fourteenth Amendment.  Finally, Plaintiffs advanced a state law tort claim of intentional infliction of emotional distress against Defendant Albright.

All three defendants seek dismissal, under Fed. R. Civ. P. 12(b)(6), of Plaintiffs' claim that the dissemination of false and defamatory information about them deprived them of liberty without due process of law.  Defendant Albright seeks dismissal, under Fed. R. Civ. P. 12(b)(6), of Plaintiffs' state law tort claim.

## STANDARD OF REVIEW

A court may not dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his or her claim that would entitle him or her to relief.  *H.J. Inc. v. Northwestern*

*Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989). In considering a Rule 12(b)(6) motion, the Court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991).

The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow the Court to assume that a plaintiff "can prove facts that [he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

## DISCUSSION

**The Fourteenth Amendment Claim.** Defendants argue that Plaintiffs have failed to state a Fourteenth Amendment claim for which relief may be granted because, under Supreme Court and Tenth Circuit precedent, defamation is a state law tort that does not, standing alone, rise to the level of a constitutional violation. In support of their argument, Defendants rely on *Paul v. Davis*, 424 U.S. 693, 699 (1976); *McGhee v. Draper*, 639 F.2d 639, 642 (10th Cir. 1981); and *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262 (10th Cir. 1989).

The Court finds that Defendants' reliance on these cases is misplaced. In *Paul v. Davis*,

5

the local police disseminated a flier labeling plaintiff as an "active shoplifter." The Court noted

that it had, on prior occasions, held that governmental actions that caused a plaintiff to be

"stigmatized" rose to the level of due process violation, and went on to state the following:

> While we have in a number of our prior cases pointed out the frequently
> drastic effect of the 'stigma' which may result from defamation by the
> government in a variety of contexts, this line of cases does not establish the
> proposition that reputation alone, *apart from some more tangible interests
> such as employment*, is either 'liberty' or 'property' by itself sufficient to
> invoke the procedural protection of the Due Process Clause.

*Paul*, 424 U.S. at 699 (emphasis added). The Court did not say that defamatory conduct on the

part of a government official could *never* violate due process; it held simply that damage to

reputation *alone* does not violate due process. Plaintiffs do not attempt to state a cause of action

for defamation alone. The complaint is replete wtih allegations of retaliatory adverse employment

actions. Thus, the Court finds that *Paul v. Davis* is clearly distinguishable and does not foreclose

Plaintiffs' due process claim.

    *McGhee v. Draper*, 639 F.2d 639 (10th Cir. 1981), supports Plaintiffs' position, not

Defendants'. In *McGhee*, government actors decided not to renew the non-tenured plaintiff's

teaching position. The District Court directed a verdict for the defendant on the liberty interest

claim and the Tenth Circuit remanded for a hearing to determine whether the Plaintiff stated a

cause of action for deprivation of a liberty interest without due process. The District Court

dismissed the matter. On appeal, the Tenth Circuit held that *Paul* did not bar the plaintiff's claim

and that, under *Paul*, "[i]n order to justify relief under the liberty clause of the 14th amendment

via § 1983, plaintiff's alleged reputational damage must be entangled with some other 'tangible

interests such as employment.'" *McGhee*, 639 F.2d at 643 (quoting *Paul*, 424 U.S. at 701).

6

Notably, the Court went on to warn that, "we should not be interpreted as implying that discharge from employment is the exclusive context in which a 'tangible interest' can be entangled with a plaintiff's liberty interest for § 1983 purposes." *Id.* at 643 n.2 (citing Monaghan, Of "Liberty" and "Property", 62 Cornell L.Rev. 405, 432-33 (1977)).

*Phelps* is similarly unavailing to support Defendants' position.  There, a plaintiff attorney sued a newspaper and the state attorney general alleging, *inter alia*, that various newspaper reports published about him were defamatory, and that this defamatory conduct deprived him of a liberty interest without due process of law.  *Phelps*, 886 F.2d at 1266.  The Tenth Circuit held that *Paul* required dismissal of the due process claim because the plaintiff alleged only that the defendants "placed a 'defamatory cloud' over his 'employment opportunities.'"  *Id.* at 1268.  The Court distinguished the case before it with *Corbitt v. Andersen*, 778 F.2d 1471 (10th Cir.1985), where it had held that the plaintiff made out a prima facie case of a liberty interest violation.  In *Corbitt*, "the plaintiff . . . alleged and presented evidence of present harm to his established business relationships. . . . In contrast, plaintiff here merely has alleged speculative future harm to prospective relationships as a result of the generalized damage to his reputation."  *Phelps*, 886 F.2d at 1268 (citing *Corbitt*, 778 F.2d at 1475).

Thus, all of the cases cited by Defendants in their motion to dismiss stand for the proposition that a plaintiff asserting a Fourteenth Amendment violation based on deprivation of a liberty interest must allege that a government official engaged in more than defamatory conduct alone, and that the government official's actions resulted in more than "speculative future harm," in order to defeat a motion to dismiss for failure to state a claim.  The Court finds that Plaintiffs have met this burden.

Before *Paul v. Davis*, the Supreme Court had already held that "'(w)here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'"  *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).  In *Roth*, like in *McGhee*, government actors decided not to renew the non-tenured plaintiff's teaching position. The Court held that no liberty interest was at stake because "[t]he State, in declining to rehire the [plaintiff], did not make any charge against him that might seriously damage his standing and associations in his community."  *Id.* at 573.  In addition, "there [was] no suggestion that the State, in declining to re-employ the [plaintiff], imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities."  *Id.*  Had either of these two events occurred, *Roth* would have been "a different case."  *Id.* at 573-74.

After deciding *Roth*, the Supreme Court next considered the issue in *Bishop v. Wood*, 426 U.S. 341 (1976).  In that case, a policeman was fired and his superior told him, in private, the reason for the termination.  The policeman brought suit in federal court under 42 U.S.C. § 1983, alleging that he was deprived of a liberty interest without due process of law because the reason given for the termination was false.  The Supreme Court held that since any potentially defamatory statement was made in private, such a statement could not "form the basis for a claim that [the plaintiff's] interest in his 'good name, reputation, honor, or integrity' was thereby impaired."  *Id.* at 348 (quoting *Constantineau*, 400 U.S. at 437).

In the case at bar, plaintiffs allege that Defendants "disseminated or caused to be disseminated false charges of dishonesty or immorality about Plaintiffs."  Specifically, they allege that Defendants caused to be disseminated to the press false allegations that Plaintiffs were

8

disgruntled employees and that they were having an affair with each other "in the wake of" Alvarez's divorce.  Plaintiffs allege specifically that the statements were made with the intention of eroding their credibility.  Assuming the truth of these allegations, Defendants have clearly made charges "that might seriously damage [Plaintiffs'] standing and associations in [their] community." *Roth*, 408 U.S. at 573.  In addition, Plaintiffs allege that this dissemination occurred during the same period of time in which the Defendants were taking adverse employment actions against Plaintiffs in retaliation for Plaintiffs' engaging in constitutionally protected speech.  Therefore, the Court finds that Plaintiffs have alleged significantly more than defamation alone.

Furthermore, the Court finds that Plaintiffs need not show that they have either been terminated or refused renewal in order to state a Fourteenth Amendment claim for deprivation of their liberty interest.  If Defendants were correct that an employee must either be terminated or be refused job renewal in order to state a claim for liberty interest deprivation, a state employer could avoid liability by retaliating fiercely and defaming an employee until the employee simply resigned. The Court finds it unlikely that the Supreme Court intended this result.  Under Supreme Court and Tenth Circuit caselaw, Plaintiffs must allege "reputational damage," which is "entangled with some other 'tangible interests such as employment.'"  *McGhee*, 639 F.2d at 643 (quoting *Paul*, 424 U.S. at 701).  Plaintiffs have met this burden.

Finally, the Court rejects Defendants' suggestion that the claim must be dismissed because Plaintiffs have failed to allege that any of the named defendants defamed them.  Plaintiffs alleged in their complaint that an unidentified spokesperson disseminated defamatory statements about them to the press.  Defendants are correct that liability under 42 U.S.C. § 1983 cannot rest upon the doctrine of respondeat superior.  However, Plaintiffs have alleged in their complaint that

Defendants were the actual cause of this dissemination; therefore, they are not relying on the doctrine of respondeat superior.

Of course, Plaintiffs are not required to prove the merit of their allegations in order to defeat a motion to dismiss; as noted above, the Court accepts as true all of their well-pleaded allegations. Furthermore, Fed. R. Civ. P. 8(a) requires only a "short and plain statement of the claim"; detailed factual allegations are not required. *See Hamilton v. Allen-Bradley Co.*, 217 F.3d 1321 (11th Cir. 2000); *Yamaguchi v. United States Dep't of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Defendants' assertion that the allegation "is a footless conclusion unsupported by factual allegations," therefore, does not provide a proper basis on which to dismiss the claim.

**The state tort claim.** Defendant Albright maintains in his motion to dismiss that Plaintiffs' intentional infliction of emotional distress claim must be dismissed because, as a state employee, he is immune from liability in tort except as waived under the New Mexico Tort Claims Act. *See* NMSA 1978, § 41-4-1, *et seq.* (1978). New Mexico has not waived immunity for intentional infliction of emotional distress claims. *See* NMSA 1978, § 41-4-5 - 41-4-12 (1978). Accordingly, Defendant Albright argues that he is immune from liability as to this claim. In response, Plaintiffs acknowledge that because defendant is a public employee and was acting in the scope of his public employment during the events in question, he is entitled to sovereign immunity; therefore, Plaintiffs agree to the dismissal of the pendant tort claim. Accordingly, the Court will grant Defendant Albright's motion.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Fourteenth Amendment Liberty Interest Claim (Count II) is hereby **DENIED** and Defendant

10

Albright's Motion to Dismiss Plaintiffs' Pendant Intentional Infliction of Emotional Distress Claim

is hereby **GRANTED**.

_____
MARTHA VÁZQUEZ
United States District Judge

<u>Attorney for Plaintiffs</u>
    Kathryn Hammel

<u>Attorney for Defendants</u>
    Jerry A. Walz

11