**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


MICHELLE A. SKRUPSKIS
and DANIEL ALVAREZ,

        Plaintiffs,

vs.                                                                 No. Civ. 00-1246  WJ/WWD

NEW MEXICO STATE HIGHWAY
AND TRANSPORTATION DEPARTMENT
RESEARCH BUREAU CHIEF DAVID ALBRIGHT,
in his individual capacity, NEW MEXICO
STATE HIGHWAY AND TRANSPORTATION
DEPARTMENT SECRETARY PETE RAHN, in
his individual capacity, and NEW MEXICO STATE
HIGHWAY AND TRANSPORTATION DEPARTMENT
DEPUTY SECRETARY CHARLIE TRUJILLO, in
his individual capacity,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment on Plaintiffs' Count One First Amendment Retaliation Claims, filed December 28, 2001 [Doc. No. 42]; Defendants' Motion for Summary Judgment on Plaintiffs' Count Two Fourteenth Amendment Liberty Interest Claims, filed December 28, 2001 [Doc. No. 45]; and Defendants Pete Rahn and Charlie Trujillo's Motion for Summary Judgment on Plaintiffs' Count Three Supervisory Claims, filed December 28, 2001 [Doc. No. 48].  The Court, having read the motions and memoranda submitted by the parties, and being apprised of the applicable law, concludes that the motion as to Count II will be granted and the motions as to Counts I and III will be denied.

## I.  BACKGROUND

This action arises from alleged employment retaliation by Defendants against Plaintiffs as a

result of their alleged speech about Defendant Albright's fiscal improprieties. Plaintiffs bring three 42 U.S.C. § 1983 claims: Fourteenth Amendment Liberty Interest violations, First Amendment retaliation, and supervisory liability.

The Transportation Research Bureau (Bureau) of the New Mexico State Highway and Transportation Department (Department) shares space with the University of New Mexico's Institute for Transportation Research/Alliance for Transportation Research (ATR) on the University of New Mexico's Albuquerque campus. The Department collaborates on transportation research projects with the University of New Mexico (UNM). It appears that ATR acts as a contractor to the Department.

Plaintiff Skrupskis was the Bureau's Planning Research Supervisor and Plaintiff Alvarez's supervisor, until her final resignation on August 3, 2001. Plaintiff Alvarez is a Transportation Researcher for the Bureau and a certified internal auditor with a background in accounting. Defendant Albright is the Bureau Chief and supervisor of all Bureau employees, including Plaintiff Alvarez and Plaintiff Skrupskis during her employment at the Bureau. Defendant Trujillo is the Deputy Cabinet Secretary for the Department and Defendant Albright's immediate supervisor. Defendant Rahn is Cabinet Secretary of the Department and Defendant Trujillo's immediate supervisor.

The multitude of pages submitted by the parties on the issue of summary judgment may be boiled down factually to the concerns Plaintiffs voiced to Defendants, the Department's Office of the Inspector General (OIG), and to the media in 1ate 1999 and the Spring of 2000, and the events that followed. Many of the facts overlap and are presented chronologically here.

In August 1999, Plaintiff Skrupskis raised concerns about another Bureau employee's work

performance impacting her own performance, the propriety of the same employee's trip to New Orleans for a training session when he was on the verge of retirement, and preferential treatment Plaintiff Skrupskis believed this employee received from Defendant Albright.

In the Fall of 1999, Defendant Albright sought Plaintiff Alvarez's support for the selection of Chris Bar, the son of a close personal friend, for the Real Work Scholar's Program. The Real Work Scholar's Program was a $25,000.00 per year renewable undergraduate scholarship to be funded, at least partially, by UNM/ATR monies.[1]

On or around December 1999, Plaintiff Alvarez informed Plaintiff Skrupskis, as his supervisor, about the lack of a selection process for the publically-funded Real Work scholarship and other money management issues.

In March of 2000, Plaintiffs voiced concerns about the propriety of the Bureau's Real Work scholarship selection process and funding mechanism to the OIG and with Defendant Trujillo.

In March and April 2000, Plaintiffs voiced additional concerns to the OIG regarding the lack of cost and revenue tracking at the Bureau, Defendant Albright's questionable expenditures, his conflicts of interest in expenditures, his possible circumvention of the State procurement code regarding Bureau contracts, and his submittal of travel reimbursement requests for expensive hotels to UNM rather than the Department.

In March and April 2000, Plaintiffs anonymously and/or nonanonymously raised their concerns about the scholarship with Albuquerque television station KOB-TV.

On March 31, 2000, after being alerted by the OIG of an anonymous call to KOB-TV

---

[1] UNM/ATR eventually declined to fund the scholarship or include it in an ATR research proposal.

regarding the Real Work scholarship, Defendant Trujillo requested the OIG initiate an investigation of the Bureau's Real Work Scholarship Program.

On April 2, 2000, Defendant Albright responded in writing to an inquiry on the scholarship matter by a KOB-TV investigative producer, Dan Vukelich. A copy of Defendant Albright's response was provided to the OIG.

In an April 5, 2000, memorandum to Defendant Trujillo, the Department's Procurement Services Bureau Chief informed Defendant Trujillo that there were problems with the Real Work scholarship program.[2]

In April, May, July, and August, Plaintiffs suffered adverse employment actions ranging from removal from projects, assignments, and appointments; termination of a temporary one-year salary increase (TSI) for Plaintiff Alvarez after a period of four months; oral public reprimand of Plaintiff Alvarez; letter of reprimand for both Plaintiffs; proposed discipline of Plaintiff Skrupskis of ten days of leave without pay; and a lower than usual performance evaluation rating for Plaintiff Skrupskis. All actions were taken by Defendant Albright with the knowledge at some point by Defendants Rahn and Trujillo. In response to the actions and perceived retaliation, Plaintiffs filed multiple grievances. Plaintiffs' grievances reached Defendants Trujillo and Rahn. Additionally, Plaintiffs sent Intra-Departmental Correspondences (IDCs) to Defendant Trujillo informing him that they believed they were being retaliated against by Defendant Albright.

---

[2] In this memo, Defendant Trujillo was informed that ATR employees had expressed concern that because ATR had raised concerns about the Real Work scholarship ATR would be negatively impacted in the funding and services contracts it received from the Bureau. Defendant Trujillo also was informed in the memo that Department's Procurement Services staff had reported that because Contract Administration staff had questioned Bureau contracts and methods, Bureau staff had been instructed not to contact the Contracts Administration and to by-pass the Contract Administration and have all Bureau contracts go through the Bureau's administrator.

On April 20, 2000, KOB-TV televised an investigative report on the scholarship matter.[3] Defendants were notified by Plaintiff Alvarez on the same date that the report was to be aired. Three Bureau employees testified in their depositions that the airing of the investigative report angered them, made them feel betrayed, resulted in distrust of Plaintiffs, and/or may have impacted job performance because of the resulting anger.

On or about May 3, 2000, Plaintiff Alvarez sent the OIG an IDC listing nine allegations. The allegations included commingling of federal and state funds, improper use of research and LTAP[4] monies to fund the Real Work Scholarship, preferential treatment by Defendant Albright in the award of services to former employees and/or friends, and improprieties in processing of per diem and travel requests of Defendant Albright.

On May 12, 2000, the OIG issued its findings on the scholarship matter including that there had been no selection criteria for the Real Work Scholarship Program and a perception of favoritism existed. A copy of the report was submitted to Defendants Rahn and Trujillo. Based on the OIG's May 2000 report, Defendant Rahn requested the OIG perform a broader investigation of the Bureau's financial management and provide information on how to remedy the Real Work scholarship selection processes.

On May 12, 2000, in response to alleged tension and workplace issues at the Bureau, Defendant Trujillo ordered a workplace assessment of the Bureau to be performed by the Department's Human Resources Management Bureau (HRMB), which also was responsible for reviewing employee grievances. As part of its workplace assessment, HRMB investigators

---

[3] The scholarship matter also was publicized by the print media on May 25, 2000.

[4] The parties did not define this term.

interviewed Plaintiffs and approximately three other employees, out of the nine employees of the Bureau in April through June 2000.

On May 24, 2000, Plaintiff Skrupskis wrote the OIG about her concerns. The OIG interviewed both Plaintiffs regarding the May 2000 allegations.

On July 11, 2000, Defendant Albright told the HRMB workplace assessment investigators that he hoped Plaintiffs would be relocated.

On or about August 15, 2000, a copy of the completed workplace assessment was forwarded by Defendant Trujillo to Defendant Albright. Three recommendations were made by the HRMB: (1) relocate Plaintiffs to a different geographical location with the same duties, responsibilities, and line of authority; (2) provide Defendant Albright with the necessary tools, resources, and support to handle staff issues; or (3) maintain the status quo pending the results of the OIG investigation. The three recommendations were intended by the investigators to be starting points with mediation to follow.

Defendant Trujillo selected the first recommendation, telling Defendant Albright to immediately relocate Plaintiffs to other offices within the UNM research complex, at least temporarily until mediation could occur. Plaintiffs' segregation was believed to be necessary by Defendants Albright and Trujillo to prevent any retaliation among Bureau employees. Defendant Albright is not aware of any retaliatory actions Plaintiffs have taken against any Bureau employees.

Defendant Albright, in consultation with Defendant Trujillo, made the decision regarding how the separation of Plaintiffs would be implemented. Defendant Trujillo also appears to have defined the methods by which communication between the Department and Plaintiffs would occur. On or about August 15, 2000, Defendant Albright instructed a Bureau employee to obtain

new office space for Plaintiffs. On August 22, 2000, Defendant Albright moved Plaintiffs' offices to a shared office in a UNM-owned building separate from their Research Bureau colleagues. Plaintiffs were required to move out of their Bureau offices in great haste, without prior notice of the move. The new office space was dirty, contained materials from its prior owner, and was considerably smaller than Plaintiffs' old offices. Furthermore, the office contained only one desk and Plaintiffs were not provided file cabinets or other necessary work implements. Files were stored in boxes. As part of the segregation of Plaintiffs, their access cards to the Bureau were deactivated. Defendant Albright instructed Bureau staff that there was to be no interaction between Plaintiffs and the rest of the Bureau except through him. Specifically, Plaintiffs were not allowed to communicate directly with their co-workers, including by e-mail or through written memos. They were required to communicate on all matters, including work project matters, through Defendant Albright. Plaintiffs were not allowed to visit the Bureau without prior notice and an escort. Plaintiffs also were forbidden from attending Bureau staff meetings, in person or telephonically. Another Bureau staff member was responsible for taking notes at the staff meetings and delivering them to Plaintiffs. Any information transmitted to Bureau employees or work materials Plaintiffs needed were to be delivered to them by Defendant Albright or his designee. The banishment of Plaintiffs restricted their access to their work materials and colleagues and slowed down the completion of tasks. According to the testimony of a HRMB workplace assessment investigator, no period of time for any segregation was suggested and Plaintiffs' current segregation of nine months was a long enough period of time and that other solutions should have been tried. At least one employee testified that he did not know why the separation had occurred and believed it was a result of the KOB investigative report.

On August 28, 2000, Plaintiffs filed this civil rights action.

On December 21, 2000 the OIG issued a report on the May 2000 allegations. The report was provided to Defendants Rahn and Trujillo. The OIG substantiated many allegations made by Plaintiffs. The OIG found that the Bureau and UNM's ATR were entangled and recommended that the Bureau be relocated to a separate facility in Albuquerque or moved to Santa Fe. The OIG also recommended that the Bureau be placed under the control of Department's Transportation Planning Division and that Defendant Albright be required to develop a standard operating procedure for the Bureau.

On February 21, 2001, the State Auditor concluded that portions of the funding for the Real Work Scholarship Program violated federal rules and guidelines.

In a February 23, 2001 report the OIG found that the Bureau had inadequate internal policies and provisions regarding procurement and key operational procedures.

In his April 13, 2001, deposition, Defendant Rahn testified that he believed Plaintiffs jumped the gun by taking the scholarship matter to the media without waiting for the completion of the Department's OIG process. He further testified, however, that as of his deposition date, the Department had taken no action regarding the issues raised by Plaintiffs at least a year earlier to the OIG or the media. He opined that Plaintiffs' lawsuit slowed down the Department's ability to respond to the issues.

On or about April 30, 2001, after Defendant Rahn's deposition, Defendant Albright was disciplined by Defendant Trujillo with suspension without pay for ten days. The suspension was imposed as a result of the OIG's audit findings and the opinion of Defendant Trujillo that Defendant Albright provided poor administrative oversight of the Bureau.

## II.  LEGAL STANDARDS

### A.    Summary Judgment

A motion for summary judgment should be granted only when there is no genuine issue of material fact and, as a matter of law, the moving party is entitled to judgment.  See Fed. R. Civ. P. 56(c).  A court's job in ruling on a motion for summary judgment is not to weigh the evidence, make credibility determinations, or draw inferences from the facts, but rather, to determine whether there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 255 (1986).  The inquiry a court must make is "whether the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  If a court finds that there are genuine and material factual issues, these issues should be resolved by the fact finder, and summary judgment is precluded.  See id. at 248.

When ruling on a motion for summary judgment, a court must construe the facts in the light most favorable to the nonmovant.  See Magnum Foods, Inc. v. Continental Casualty Co., 36 F.3d 1491, 1497 (10th Cir. 1994).  All doubts must be resolved in favor of the existence of triable issues.  See World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985). Factual inferences tending to show triable issues must be considered in the light most favorable to the existence of those issues.  See Seamons v. Snow, 206 F.3d 1021, 1026 (10th Cir. 2000); see also Anderson, 477 U.S. at 255 (drawing of legitimate inferences from facts is jury function, not judge function on motion for summary judgment).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the nonmovant to come forward with

evidence showing that there is a genuine issue of material fact.  See Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

**B.  Qualified Immunity**

"Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known."  Finn, 249 F.3d 1241, 1249-50 (internal quotations omitted) (omission in Finn).  Consequently, special rules are applied when a defendant raises the defense of qualified immunity.

Once the defendant pleads qualified immunity, the burden shifts to the plaintiff to demonstrate: (1) the defendant's conduct violated the law and (2) the relevant law was clearly established when the alleged violation occurred.  See Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Unless both prongs of the test are satisfied, qualified immunity must be granted.  See Clanton v. Cooper, 129 F.3d 1147, 1153-54 (10th Cir. 1997).  "In showing that the law was clearly, established, the plaintiff does not have to show that the specific action at issue has been held unlawful, but the alleged lawfulness of the defendant's conduct must be apparent in light of preexisting law."  Armijo v. Wagon Mound Pub. Sch., 159 F.3d 1253, 1260 (10th Cir. 1998).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson, 483 U.S. at 640; Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1278 (10th Cir. 1998) (In short, some, but not identical, correspondence is required between the cases cited and the factual situation in the case at hand.).  To show a right is clearly established,

there must be Supreme Court or Tenth Circuit law on point, or the weight of authority from other courts must support the plaintiff's proposition. See Armijo, 159 F.3d at 1260. If the plaintiff meets his burden of coming forward with facts or allegations which would demonstrate that the defendant's alleged violation should have been apparent in light of preexisting law, then the defendant assumes the normal summary judgment burden of establishing that no material facts remain in dispute that would defeat his claim of qualified immunity. See Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir. 1992); Jantz v. Muci, 976 F.2d 623, 627 (10th Cir. 1992); see also Brown v. City of Belen, No. 97-2139, 141 F.3d 1184, 1998 WL 115856 at *3 (10th Cir. Mar. 16, 1998) (unpublished disposition).

## III. DISCUSSION

### A.   Count II (Liberty Interest)

Defendants seek the dismissal of Plaintiffs' Fourteenth Amendment Liberty Interest claim (Count II). The bases of Count II are alleged defamatory comments made in May 2000 by a Department spokesperson, Kathie Leyendecker, to a member of the press, Dan Vukelich, that Plaintiffs were disgruntled employees and, as a result of a recent divorce, were romantically involved. The alleged comments were made in an alleged attempt by the Department or Defendants to discredit Plaintiffs. Plaintiff Skrupskis allegedly learned of these statements from Mr. Vukelich.

Defendants contend that Plaintiffs' supporting evidence for the above contention consists of only inadmissible double hearsay (Plaintiff Skrupskis' testimony of what the press person, Mr. Vukelich, relayed to her regarding what the Department spokesperson, Ms. Leyendecker, told him). Defendants also submit twenty-four undisputed material facts on the issue of the alleged

defamatory statements and their effect on Plaintiffs' employment, supported by affidavits or deposition testimony. The list of material facts includes: Ms. Leyendecker never made the alleged statements to Mr. Vukelich; Defendants never made the alleged statements or false charges of Plaintiffs' dishonesty or immorality; Defendants never encouraged anyone, including Ms. Leyendecker, to make or disseminate the alleged comments; and Plaintiff Alvarez has no evidence that his segregation at the Bureau was a factor in his unsuccessful employment attempts with employers outside the Department.

In their response to Count II, Plaintiffs do not dispute any of Defendants' material facts or supply their own statement of the material facts to which they contend a genuine issue exists. Rather, for the purposes of narrowing the issues to be tried, Plaintiffs agree to the dismissal of Count II. Therefore, summary judgment will be granted in Defendants' favor as to Count II.

This does not end the discussion of the alleged dissemination of defamatory comments, however, because Plaintiffs limit their concession of Count II by reserving Plaintiff Skrupskis' testimonial evidence of the alleged dissemination of the alleged defamatory statements as partial proof of their retaliation and supervisory liability claims. Plaintiffs contend that Plaintiff Skrupskis' deposition testimony is admissible as to their other claims because it is not hearsay. Plaintiffs argue the testimony is not being offered for the truth of the matter asserted since the disseminated statements testified to were false. Alternatively, the statements testified to fall within a hearsay rule exception as statements made by party-opponents. Defendants respond that not only are the alleged statements at issue hearsay and thus, inadmissible, but that having failed to controvert their statement of material facts, Plaintiffs are deemed to have admitted them and thus, cannot rely on Plaintiff Skrupskis' testimony regarding the alleged defamatory statements to

support any of their remaining claims.

Local Rule 56(b) provides that a memorandum in opposition to a summary judgment motion must contain a concise statement of the material facts as to which the party contends genuine issues exist and state with specificity the facts of the movant which are disputed. D.N.M.LR-Civ. 56(b). "All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted." Id. Plaintiffs did not provide any material facts as to which they contend there is a genuine issue nor did they controvert any of the facts contained in Defendants' summary judgment motion on Count II. Consequently, the material facts provided by Defendants in their Count II summary judgment motion are deemed admitted by Plaintiffs. Furthermore, in deciding the remaining summary judgment motions, the Court will not consider Plaintiff Skrupskis' deposition testimony concerning the alleged defamatory statements. The deposition testimony is soundly contradicted by Plaintiffs' deemed admissions on the issue.

As to trial admissibility, Plaintiff Skrupskis' testimony regarding what Mr.Vukelich allegedly told Plaintiff Skrupskis about what Ms. Leyendecker told him is double hearsay. Hearsay within hearsay is admissible only if "each part of the combined statements" falls within an exception to the hearsay rule. Evid. R. 805. The first level of the double hearsay, Ms. Leyendecker's alleged comments to Mr. Vukelich that Plaintiffs were disgruntled employees and were having an affair, is admissible because it is not being offered for the truth of the matter asserted (i.e., that Plaintiffs were disgruntled employees and were having an affair) but to demonstrate that Ms. Leyendecker made the alleged statements to Mr. Vukelich.[5] The second

_____

[5] Technically, then, this portion of Plaintiff Skrupskis' testimony is not "hearsay." Fed.R.Evid.801(c). The Court's conclusion on the admissibility of this portion of the testimony moots Plaintiffs' argument that this portion of the testimony is admissible under the party-opponent exception to the

level of the testimony, Mr. Vukelich's alleged statement to Plaintiff Skrupskis that Ms. Leyendecker made defamatory comments about Plaintiffs to him, however, is inadmissable because Mr. Vukelich's alleged statement is offered for the truth of the matter asserted (i.e., that Ms. Leyendecker, made the alleged comments to him).

Finally, Mr. Vukelich's statement to Plaintiff Skrupskis does not fall within the party-opponent exception to the hearsay rule because the declarant, Mr. Vukelich, is not a party-opponent. Fed. R.Evid. 801(d)(1).

Defendants' motion for summary judgment as to Count II will be granted because it is unopposed by Plaintiffs. Furthermore, the "undisputed material facts" enumerated in the motion's supporting memorandum are, pursuant to Local Rule 56(b), deemed admitted by Plaintiffs. Finally, the deposition testimony of Plaintiff Skrupskis regarding the alleged dissemination of defamatory comments about Plaintiffs is inadmissible at trial because no hearsay exception allowing its admission applies.

## B.     Count I (First Amendment Retaliation)

Defendants urge the Court to grant them summary judgment on Plaintiffs' First Amendment retaliation claim (Count I) because they are entitled to qualified immunity as Plaintiffs cannot prove a violation of their First Amendment rights. Defendants further contend that their actions were objectively reasonable in light of clearly established law.

"[A] public employer cannot retaliate against an employee for exercising his constitutionally protected right of free speech." Finn v. N.M., 249 F.3d 1241, 1246 (10th Cir.2001) (quotation omitted); Connick v. Myers, 461 U.S. 138, 142 (1983). Moreover, "the

---

hearsay rule.

14

presence of a legitimate reason is not always sufficient to preclude a civil rights action where adverse action may have been taken in retaliation for protected activity." Finn v. N.M., No. 99cv982, Doc. No. 41 at 4 (D.N.M. Jan. 29, 2002) (unpublished order). A First Amendment retaliation claim is evaluated under a well-established test requiring: a determination of "whether the employee's speech involves a matter of public concern" and a balancing of the employee's interest "against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Finn, 249 F.3d at 1246 (quotations omitted); Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). If this "balance tips in favor of the employee, the employee then must show that the speech was a substantial factor or a motivating factor" in the challenged employment decision. Id. (quotations omitted). Finally, if the employee establishes that the speech was a factor, "the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." Id. (quotation omitted). The first two steps concern whether the expression at issue is subject to the protection of the First Amendment. Thus, they present questions of law to be resolved by the court. See Kent v. Martin, 252 F.3d 1141, 1143 (10th Cir. 2001) (internal quotations omitted). The last two steps concern causation and, if the first two steps are in the employee's favor, are questions of fact for the jury. See id.; Melton v. City of Okla. City, 879 F.2d 706, 713 (10th Cir. 1989), modified on other grounds, 928 F.2d 920 (10th Cir. 1991) (en banc).

1.      Public Concern

As to the first inquiry, Plaintiffs' speech to Defendants, the OIG, and the media regarding Bureau mis- and/or malfeasance without question involved or touched matters of public concern. Conaway v. Smith, 853 F.2d 789, 797 (10th Cir. 1988) (citing Connick, 461 U.S. at 152) ("Speech

that seeks to expose improper operations of the government or questions the integrity of

government officials clearly concerns vital public interests."); Prager, 180 F.3d at 1191 (whistle

blowing activity entitled to substantial weight).[6]

2.      Balancing of Interests

Moving to the second inquiry, when balancing the right of employees against that of their

employer, the employees' First Amendment rights are entitled to greater weight when their speech

involves clear public concern.  See Conaway, 853 F.2d at 797 (citing Connick, 461 U.S. at 152).

When evaluating the employer's interest, relevant considerations include "'whether the statement

impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close

working relationships for which personal loyalty and confidence are necessary, or impedes the

performance of the speaker's duties or interferes with the regular operation of the enterprise.'"

Prager, 180 F.3d at 1191 (quoting Rankin, 483 U.S. at 388).  Notwithstanding these

considerations, "an employee's speech will not be left unprotected simply because his 'whistle

blowing might jeopardize the harmony of the office or tarnish the integrity of the department.'"  Id.

(quoting Conaway, 853 F.2d at 798).

Plaintiffs' speech, as identified above, "involved some impropriety on the part of" the

government or its employees and, thus, is entitled to a greater presumption of First Amendment

protection.  Conaway, 853 F.2d at 797; see Prager, 180 F.3d at 1191 (employee's constitutional

right to expose governmental misconduct entitled to substantial weight); cf. Key v. Rutherford,

645 F.2d 880, 885 (10th Cir. 1981) ("[O]perational efficiency objections to speech must be real

---

[6] Only minute portions of Plaintiffs' speech to Defendants or the OIG concerned matters of personal
interest.  Conaway, 853 F.2d at 796.

16

and important before they can serve as a basis for discipline or discharge of a public employee."). Only Plaintiffs' speech to the media regarding the Real Work Scholars Program may have disrupted the workplace, such that the balance against protection of this speech would tip in favor of Defendants. However, the evidence regarding resulting disruption of the Bureau as a result of Plaintiffs' speech to the media is not overwhelming. Further, the evidence shows that any disruption in the efficient performance of public services was more a result of Defendants' actions (or inaction) than of Plaintiffs' speech. Finally, while "confidence and loyalty are attributes which help any office function," they have "limited importance" in a workplace such as the Bureau or the Department. See Conaway, 853 F.2d at 798. "It would be anomalous to hold that because the employee's whistle blowing might jeopardize the harmony of the office or tarnish the integrity of the department, the law will not allow him to speak out on his perception of potential improprieties or department corruption." Id. The Court concludes that Plaintiffs' interest in free speech outweighs the Department or Defendants' interest in regulating Plaintiffs' speech. As a matter of law, Plaintiffs engaged in speech protected by the First Amendment.

3. Substantial Factor and Same Action

After reviewing the evidence before it, the Court concludes that genuine issues of material fact exist regarding whether Plaintiffs' speech was a substantial or motivating factor in the adverse employment actions and whether Defendants would have taken the same adverse actions in the absence of Plaintiffs' speech. Therefore, the granting of summary judgment in Defendants' favor is precluded.[7] Plaintiffs' First Amendment Retaliation claims must be submitted to the jury as to

---

[7] For example, the adverse actions occurred in the same time frame as Plaintiffs' protected speech and there is conflicting evidence as to the justification for or necessity of the actions.

the final two inquiries [260 F.3d 1218, 1225; Getz v. Board of County Commissioners of the County of Shawnee, Kan., 194 F.Supp.2d 1154, 1155-67 (D.Kan 2002)]

4. Qualified Immunity

The final issue is whether Defendants, in their individual capacities, were protected by qualified immunity when adverse employment actions were taken against Plaintiffs. The law was clearly established before 2000, if not 1999, that an employee may not suffer adverse employment action "in retaliation for lawful exercise of [F]irst [A]mendment freedoms." Ware, 902 F.2d at 819 (internal quotation marks omitted); see Connick, 461 U.S. at 142; Schuler v. City of Boulder, 189 F.3d 1304, 1308 (10th Cir. 1999). Dill v.City of Edmond Okla., 155 F.3d 1193, 1204 (10th Cir. 1998) ("[E]mployer action short of discharge may violate an employee's First Amendment rights." (citing Rutan v. Republican Party of Illin., 497 U.S. 62, 72 (1990)). It was also clearly established that speech, such as Plaintiff's, which touches matters of public concern was protected, and that an employee's strong interest in disclosing governmental wrongdoing outweighs insignificant or unsubstantiated assertions of workplace disruption. See Conaway, 853 F.2d at 797; Wulf, 883 F.2d at 862. Therefore, Defendants in their individual capacities are not entitled to qualified immunity as to Plaintiffs' First Amendment claim.

**C.    Count III (Supervisory Liability)**

In Count III, Plaintiffs allege that Defendants Rahn and Trujillo violated § 1983 by breaching their constitutional duties of supervision in violation of the Fourteenth Amendment. Plaintiffs specifically contend that Defendants Rahn and Trujillo knew about Defendant Albright's retaliation against Plaintiffs because of their protected speech. Additionally, Plaintiffs contend that Defendant Trujillo was directly involved in the allegedly pretextual discipline of Plaintiff

18

Skrupskis on July 18, 2000, which was later withdrawn, and of the segregation or banishment of Plaintiffs from the Bureau and prohibition of all contact by Plaintiffs with their colleagues.

Defendants Rahn and Trujillo contend they are entitled to summary judgment on Plaintiffs' supervisory liability claims because: (1) there has been no underlying constitutional violation, (2) Defendants Rahn and Trujillo did not have actual knowledge of the existence of constitutional violations, or (3) even if Defendants Rahn and Trujillo had knowledge, they did not acquiesce in the violations. Defendants Rahn and Trujillo further argue they are entitled to summary judgment based on the application of qualified immunity. Like municipalities, supervisors cannot be held liable for the acts of employees solely on the basis of responsdeat superiors. Monell v. Dept. of Social Services, 436 U.S. 658, 691-95 (1978); Gagan v. Norton, 35 F.3d 1473, 1476 (10th Cir. 1994). In order to overcome the qualified immunity of a supervisor, a plaintiff must establish a "deliberate, intentional act by the supervisor to violate constitutional rights." See Jenkins v. Wood, 81 F.3d 988, 994-95 (10th Cir.1996)(citing Woodward, 977 F.2d at 1399); A plaintiff may satisfy this standard by showing the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance. Id. This law was clearly established at the time of Defendants' alleged conduct.

Viewing the facts most favorable to the Plaintiffs, I find that there exists a dispute of fact regarding whether Trujillo acted in a retaliatory manner against Plaintiffs. Defendant Trujillo was aware of the OIG and media investigations of the Bureau operations and of Plaintiffs' grievances. Defendant Trujillo was also directly involved to some degree with the adverse actions against Plaintiffs. Both he and Defendant Albright made the decision concerning Plaintiffs' segregation from other Bureau employees and directed the manner in which it was carried out.

Plaintiffs' challenges to Defendants' undisputed facts against Defendant Rahn, however, are not of the same ilk, and do not persuade me that he should remain in this case as a Defendant as to Count III. To be held liable as a supervisor, Plaintiffs must present evidence that Defendant Rahn acquiesced, or participated in the alleged retaliatory conduct. They have not done so. Defendant Rahn may have been aware of most, if not all, of the adverse actions against Plaintiffs through their grievances. However, he testified that he was unaware of Plaintiffs' banishment, the length of the segregation, the conditions of their new office space, or the limitations on the interaction and communication between Plaintiffs and other Bureau staff and their access to the Bureau.

Plaintiffs have not presented sufficient evidence, direct or circumstantial, to create a dispute of fact on the issue of Defendant Rahn's involvement with the adverse actions taken against Plaintiffs. Cmp., e.g., Hom v. Squires et al, 81 F.3d 969 (10th Cir. 1996) (even if plaintiff's speech was protected, causal connection between speech and alleged illegal conduct did not exist). Mere awareness of Plaintiffs' speech, their grievances, and the OIG reports, does not bring Defendant Rahn within the purview of the standard for supervisory liability. The fact that he did not conduct separate and additional investigations into the grievances, but rather relied on the reports and recommendations of the individuals who were assigned to conduct the investigations, is insufficient to establish the required connection between Defendant Rahn's conduct and the alleged unconstitutional actions taken against Plaintiffs. See Worrell v. Henry, 219 F.3d 1197, 1214 (10th Cir. 2000) (plaintiff must show "affirmative link"between supervisors' conduct and alleged unconstitutional acts of subordinates). Moreover, supervisory liability on a theory of failure to supervise or acquiescence can hardly be imposed on a Cabinet Secretary who chooses to

rely on subordinates to whom he has delegated certain functions rather than redoing the work himself or ordering it done again, in the absence of any other evidence to support a retaliatory motive. See Woodward, 977 F.2d at 1399.  Accordingly, Summary judgment as to Count III will be denied as to Defendant Trujillo, but granted as to Defendant Rahn.

THEREFORE,

**IT IS ORDERED** that Defendants' motion for summary judgment as to Count II (Liberty Interest), filed December 28, 2001 [Doc. No. 45], is GRANTED.  In addition, the "undisputed material facts" enumerated in the motion's supporting memorandum are deemed admitted by Plaintiffs.  Furthermore, the deposition testimony of Plaintiff Skrupskis regarding the Department's alleged dissemination of defamatory comments was not considered by the Court in evaluating the summary judgment motions before it because the testimony is confuted by Plaintiffs' deemed admissions.  This testimony also is inadmissible as proof at trial because it constitutes double hearsay and no exception allowing its admission applies.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment as to Count I (First Amendment retaliation), filed December 28, 2001 **[Doc. No.  42]**, is DENIED.

**IT IS FURTHER ORDERED** that Defendants Pete Rahn and Charlie Trujillo's motion for summary judgment as to Count III (supervisory liability), filed December 28, 2001 **[Doc. No. 48]**, is DENIED as to Defendant Trujillo, but GRANTED as to Defendant Rahn.

_____

UNITED STATES DISTRICT JUDGE